UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ESTATE OF CONFESSOR HICHEZ-ZAPATA,
ROBERT HICHEZ, JESSICA HICHEZ, and
ROBERT HICHEZ, as Administrator of the
Estate of Confessor Hichez-Zapata (pending) on
behalf of R.H. (minor) on behalf of Y.H. (minor),

                          Plaintiffs,                      21-cv-4261 (PKC)

    -against-                         OPINION AND ORDER

QUENIA D. EMERECIA and IUOE LOCAL 15
ANNUITY FUND,

                          Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        The descendants of Confessor Hichez-Zapata (the "Decedent") seek to recover the proceeds of his annuity fund, which they claim were wrongfully distributed to his former wife. At the time of his death in December 2018, Decedent was a participant in an employee pension benefit plan established by the IUOE Local 15 Annuity Fund (the "Plan"). Plan documents provided that in the event a participant had not designated a beneficiary at the time of death, all proceeds would be distributed to the surviving spouse, or, if there was no living spouse, to the participant's estate.

        Decedent married defendant Quenia D. Emerecia on June 27, 2008, and on May 10, 2017, Decedent and Emerecia executed a stipulation of divorce in the Dominican Republic. After Decedent's death, Emerecia applied to the Plan for distribution of Decedent's annuity account balance, certifying that she was his surviving spouse. The Plan then distributed the $488,567.75 balance in Decedent's annuity account to Emerecia.

Plaintiffs in this case are the Estate of Confessor Hichez-Zapata (the "Estate"), Robert Hichez and Jessica Hichez. Robert and Jessica are Decedent's adult children.[1] Robert also seeks to bring claims in his capacity as Estate administrator on behalf of R.H. and Y.H., who are Decedent's minor children. Plaintiffs bring claims sounding in fraud against Emerecia, and one claim of negligence against the Plan, asserting that the Plan did not adequately investigate and confirm Emerecia's claimed spousal status prior to distributing the account's balance to her. Discovery is closed.

The Plan moves for summary judgment pursuant to Rule 56, Fed. R. Civ. P. For the reasons that will be explained, the Court concludes that Robert and Jessica do not have statutory standing to pursue the claim against the Plan because they do not fall within the categories of persons designated to bring a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Separately, the claims of the Estate and of Robert in his capacity as Estate administrator will be dismissed because plaintiffs have not offered evidence that Robert has legal authority to proceed on behalf of the Estate, despite repeatedly being advised of the obligation to do so. Alternatively, assuming that any plaintiff could proceed, the Plan's motion will be granted because plaintiffs have not identified the breach of any duty established by ERISA or Plan documents.

BACKGROUND.

In support of its motion, the Plan submitted 23 exhibits annexed to the Declaration of James M. Steinberg and a statement of undisputed facts as required by Local Civil Rule 56.1. Plaintiffs' opposition does not annex evidence and plaintiffs did not file a response to defendants' Rule 56.1 Statement, as required by Local Civil Rule 56.1(b). It appears that the

---

[1] For ease of reference, the Court will refer to Decedent's adult descendants by their first names.

relevant facts are largely undisputed and that the motion turns entirely on the application of ERISA to the record.  This background summary is therefore based upon the evidence submitted by the Plan.

The Plan is an employee pension benefit plan established under ERISA and the Labor Management Relations Act.  (Def. 56.1 ¶ 1.)  At the time of his death on December 29, 2018, Decedent was a participant in the Plan and maintained an annuity account balance of $488,567.75.  (Def. 56.1 ¶¶ 9-10.)

Decedent and Emerecia were married in New York on June 27, 2008.  (Def. 56.1 ¶ 5.)  On May 10, 2017, Decedent and Emerecia executed a "Stipulation of Divorce" written in Spanish.  (Def. 56.1 ¶ 6; Steinberg Dec. Ex. H.)  On January 11, 2018, which was twelve days after Decedent's death, a copy of the marriage certificate of Decedent and Emerecia was faxed to the Plan from the Accounts Payable & Payroll Administrator at S&E Bridge & Scaffold in Carlstadt, NJ, which was Decedent's former employer.  (Steinberg Dec. Ex. I & Def. 56.1 ¶ 7.) On February 21, 2019, approximately two months after Decedent's death, the Dominican Republic issued an "Extracto De Acta De Divorcio," or judgment of divorce, for the marriage of Decedent and Emerecia.  (Steinberg Dec. Ex. K; Def. 56.1 ¶ 8.)  The Extracto De Acta De Divorcio was never submitted to a New York court for recognition.  (Def. 56.1 ¶ 18.)  Emerecia was never served a copy of the Extracto De Acta De Divorcio.  (Def. 56.1 ¶ 19.)

On April 20, 2019, Emerecia applied to the Plan for distribution of Decedent's account balance, in a document captioned "Statement of Annuity Beneficiary or Other Claimant."  (Steinberg Dec. Ex. N; Def. 56.1 ¶ 11.)  For the entry, "Your relationship to insured," Emerecia wrote, "SPOUSE," and she signed the form below a certification stating, "I hereby certify that, to the best of my knowledge and belief, the above statements and answers are true."

(Steinberg Dec. Ex. N.)  Emerecia also completed and signed a "Death Benefit Distribution Form" that included the sub-heading "For Surviving Spouse Beneficiaries Only."  (Steinberg Dec. Ex. N.)  That form was approved and signed by Plan Administrator Katherine Clancy on April 28, 2019.  (Steinberg Dec. Ex. N.)  From November 2009 until Decedent's death, Emerecia received health benefits from the Plan based on her status as Decedent's spouse.  (Def. 56.1 ¶¶ 22-23; Steinberg Dec. Ex. Q.)

Plaintiffs Robert and Jessica were unaware that Decedent was married to Emerecia until sometime after his death, and consequently were unaware of their divorce.  (Def. 56.1 ¶¶ 16-17; Steinberg Dec. Ex. V at 49, Ex. J at 11-13 ("Prior to the death, I had no idea my father was married.").)  Decedent never informed plaintiffs Robert or Jessica that he had an annuity account with the Plan.  (Def. 56.1 ¶ 20.)  Decedent did not register any plaintiff for health benefits from the Plan, though all four of his children were designated as recipients of his death benefits.  (Def. 56.1 ¶ 24-25; Steinberg Dec. Ex. Q.)

On December 3, 2020, plaintiffs' counsel submitted a written appeal to the Plan, requesting that the distribution to Emerecia be rescinded and that the account's proceeds be distributed to plaintiffs, stating, "It is our position that this distribution was error because Ms. Emerencia [sic] was divorced from Mr. Hichez-Zapata at the time of his death and, therefore, any designation of Mr. Hichez-Zapata's beneficiary was revoked due to this divorce."  (Def. 56.1 ¶ 14; Steinberg Dec. Ex. O.)  The Plan's board of trustees denied the appeal.  (Def. 56.1 ¶ 15; Steinberg Dec. Ex. P.)  The written denial noted that Decedent did not designate any beneficiaries to his annuity account, that the Plan did not become aware of the "Extracto De Acta De Divorcio" until it was submitted by plaintiffs in December 2019, and that Emerecia certified in her application that she was Decedent's spouse.  (Steinberg Dec. Ex. P.)  The denial also stated

that ERISA required trustees to administer the Plan according to Plan documents, which provided for distribution to be made to a surviving spouse in the event that no other beneficiary was named. (Steinberg Dec. Ex. P.)

This action was originally filed in the Supreme Court of the State of New York, Bronx County and removed by the Plan on grounds of ERISA preemption. (ECF 1.) The sole claim against the Plan asserts that it was negligent in distributing the account proceeds to Emerecia because the Plan breached a purported duty to plaintiffs "by failing to properly authenticate the fraudulent documents" submitted by Emerecia. (ECF 1-1.)

In addition to acting as a plaintiff in his individual capacity, Robert Hichez is also named a plaintiff in his capacity as "pending Administrator of the Estate of Confessor Hichez-Zapata, representing the interest of the Estate and R.H. and Y.H., the minor children of decedent." (Compl't ¶ 4.) Robert's status as estate administrator has been at issue from the outset of this case.

After the Initial Pretrial Conference of July 15, 2021, the Court issued a scheduling Order that stated: "The claim of the estate and the claim of Robert Hichez as administrator of the estate is dependent upon his being appointed as administrator of the estate, and those claims asserted in this action by the estate or by the administrator cannot be adjudicated unless and until such an appointment is made." (ECF 17 at 3.) After a status conference of January 10, 2022, the Court stayed the action pending a ruling from the Bronx County Surrogate Court appointing an administrator of Decedent's estate. (1/10/22 Minute Entry.) On April 21, 2023, plaintiffs advised the Court that Robert had been granted Amended Letters of Administration by the Bronx court. (ECF 27.) After the close of discovery, an Order of May 19, 2023 stated: "Plaintiff shall amend the complaint to add the administrator as plaintiff

and leave to do so is granted. File amended pleading in 14 days." (ECF 31.) No amended complaint was filed. Plaintiffs did not request an extension and made no other application regarding an amendment or Robert's status as Estate administrator. The Plan's pre-motion letter of January 5, 2024 noted that the complaint had not been amended to add an Estate administrator and explained that the Plan expected to argue on summary judgment that plaintiffs lacked the capacity to sue on behalf of the Estate. (ECF 35.) Again, plaintiffs submitted no letter in response, and made no further submission regarding Robert's status as Estate administrator.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A genuine factual dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Truitt v. Salisbury Bank & Tr. Co., 52 F.4th 80, 85 (2d Cir. 2022) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram

Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'"  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

DISCUSSION.

    I.    <u>Robert and Jessica Do Not Have Statutory Standing under ERISA.</u>

The Plan was established pursuant to ERISA.  (Plan art. III § 15 ("The Plan is intended to constitute a plan described in Section 404(c) of ERISA and the regulations issued thereunder.") (Steinberg Dec. Ex. E); see also id. Art. XI § 3 (noting trustees' obligations under ERISA).)  "The provisions of the Plan shall be construed, regulated and administered under the laws of the State of New York except as otherwise provided under ERISA and other applicable federal laws."  (Id. art. XIV.)  The Summary Plan Description advises participants of their rights under ERISA.[2]  (ECF 39-6 at 20-21.)

Section 502(a)(1)(B) of ERISA provides that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

---

[2] Plaintiffs argue that ERISA preemption should not be "a shield against liability" for the Plan's purported negligence, but also appear to acknowledge that ERISA governs their claim against the Plan.  (Opp. Mem. at 2.)

terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Section 502(a)(1)(B) of ERISA authorizes health plan participants and beneficiaries to bring civil enforcement actions to recover plan benefits." Simon v. Gen. Elec. Co., 263 F.3d 176, 177 (2d Cir. 2001). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The Plan defines a "Beneficiary" as "a person designated by a Participant to receive any monies due to the Participant at the date of death or becoming due by virtue of his death." (Plan art. I § 4.)

"[T]he Supreme Court [has] construed § 502 narrowly to permit only the parties enumerated therein to sue directly for relief." Simon, 263 F.3d at 177. "'[I]n the absence of some indication of legislative intent to grant additional parties standing to sue, the list in § 502 should be viewed as exclusive.'" Id. (quoting Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 14 (2d Cir. 1991)); see also Connecticut v. Physicians Health Servs. Of Connecticut, Inc., 287 F.3d 110, 121 (2d Cir. 2002) ("Courts have consistently read § 1132(a)(3) as strictly limiting 'the universe of plaintiffs who may bring certain civil actions.'") (quoting Harris Trust and Savs. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 247 (2000)).[3]

Plaintiffs do not dispute that section 502(a)(1)(B) provides a right of action only to plan participants and beneficiaries, but contend that a jury must decide whether the individual plaintiffs were beneficiaries of Decedent's annuity account. Plaintiffs speculate that Decedent mistakenly "conflat[ed] the Annuity Plan documents with the Welfare Plan Documents." (Opp. Mem. at 6.) They point to the Annuity Fund Beneficiary Designation Form, which was executed

---

[3] The Second Circuit has "carved out a narrow exception to the ERISA standing requirements" for healthcare providers that were validly assigned a beneficiary's claim in exchange for health-care services, an exception not at issue here. Montefiore Med. Ctr. v. Teamsters Loc. 272, 642 F.3d 321, 329 (2d Cir. 2011) (quotation marks omitted).

on October 21, 2009. (Steinberg Dec. Ex. U.) Decedent's "Marital Status" option is checked as "Married." (Id.) The form's instructions advise, "If you are married and have not designated your spouse as your sole primary beneficiary (Read: 100%), your designation of beneficiary will not be effective unless consented to by your spouse and his or her signature notarized." (Id.) "If you wish to designate more than one primary beneficiary, the percentages must add up to 100%." (Id.) The form is executed by Emerecia and Decedent, and Emerecia's signature is witnessed by a notary public. (Id.) However, there are no entries on page 2 of the form, where the names and personal information of any beneficiary is to be entered. (Id.) Neither plaintiffs nor the Plan urge that the Annuity Fund Beneficiary Designation Form adequately designated Emerecia as a beneficiary.

Plaintiffs point out that on October 14, 2009, Decedent listed Robert, Jessica, R.H. and Y.H. as beneficiaries of his welfare death benefits. (Steinberg Dec. Ex. Q.) In that form, Decedent checked entries that identified him as "Female" and "Divorced," but he also lists Emerecia as his spouse. (Id.) The final page of the plan is designated "For Office Use Only" and is completed by a person named Mary Hickey, with the signature date November 16, 2009. (Id.) Next to the "Comments" entry, Hickey wrote: "Your wife has been enrolled under your plan however I noticed you list your children as beneficiaries and you did not enroll them. In order to enroll them under your plan and be eligible for benefits you must complete all areas of this form as well as submit the required supporting documentation (see highlighted areas)." (Id.)

Plaintiffs urge that when the Welfare Plan form is viewed alongside the Annuity Plan form, the two documents suggest that Decedent had a subjective intent to list his four children as beneficiaries of the Annuity Plan but failed to include them due to his own paperwork error. (Opp. Mem. at 6-7.) But as completed by Decedent, the Welfare Plan form expressly

identifies each individual plaintiff as a 25% beneficiary of his death benefits, whereas the Annuity Plan form makes no mention of plaintiffs.  "The law is 'well established that conclusory statements, conjecture, or speculation' are inadequate to defeat a motion for summary judgment."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 85 (2d Cir. 2005) (quoting Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 370 n. 3 (2d Cir. 2003)).  Plaintiffs' contention that Decedent intentionally listed his descendants as beneficiaries in one form but mistakenly omitted them in a second is unsupported conjecture and speculation that would not permit a reasonable trier of fact to conclude that he intended to list plaintiffs as beneficiaries of the annuity account.

Even if Decedent erred in his paperwork, however, his subjective intention would not permit a trier of fact to find that plaintiffs are Plan beneficiaries.  The Plan defines a "Beneficiary" as "a person designated by a Participant to receive any monies due to the Participant at the date of death or becoming due by virtue of his death." (Plan art. I § 4.)  No plaintiff was designated as a beneficiary.  "A potential beneficiary . . . is not a beneficiary."  Park v. Trustees of 1199 SEIU Health Care Emps. Pension Fund, 418 F. Supp. 2d 343, 351 (S.D.N.Y. 2005) (Koeltl, J.).  To bring an ERISA claim, the beneficiary must satisfy "the threshold requirement of having been designated by the participant (or by the terms of the plan) . . . ." Id. at 350; see also Coleman v. Champion Int'l Corp./Champion Forest Prod., 992 F.2d 530, 533 n.6 (5th Cir. 1993) ("we do not agree that the mere possibility that one could potentially have been named beneficiary is sufficient to confer status under § 1132.").  Decedent did not designate any individual plaintiff as a beneficiary under the Plan, and they therefore do not have statutory standing under ERISA.

Robert and Jessica's claim against the Plan will therefore be dismissed.

II.      Plaintiffs Have Not Pointed to Evidence that
<u>Robert Is the Lawful Estate Administrator.</u>

As noted, Robert's status as Estate administrator has been at issue from the outset of this case. The Court repeatedly stated that Robert must be appointed administrator of the Estate in order for the Estate's claim to proceed, including in the Scheduling Order of July 15, 2021 (ECF 17 ("The claim of the estate and the claim of Robert Hichez as administrator of the estate is dependent upon his being appointed as administrator of the estate . . . .")), at the status conference of January 10, 2022 (Minute Entry ("The action is stayed pending a ruling by the Bronx surrogate court appointing an administrator for the plaintiff estate.")) and the Order of May 19, 2023 after the close of discovery (ECF 31 (directing that plaintiffs "shall amend the complaint to add the administrator as plaintiff . . . .")). The Plan's pre-motion letter also stated that no Estate administrator had been added as a plaintiff and that the Estate "lacks standing to proceed . . . ." (ECF 35.)

Plaintiffs did not amend the Complaint to allege Robert's status as administrator. Plaintiffs' letter of April 27, 2023 advised: "Pursuant to Your Honor's directive, my client, Robert Hichez, as the Administrator of the Estate of Confessor Hichez-Zapata, was granted Amended Letters of Administration by the Bronx County Surrogage's [sic] Court . . . ." (ECF 27.) That letter attached a document from Western Surety Company issued to Robert Hichez "for the security and benefit of the persons then or thereafter interested in the Estate of Confessor Hichez Zapata" in the amount of $489,000. (<u>Id.</u>) It did not attach letters of administration or any other judicial document reflecting Robert's status as estate administrator.

"A personal representative is a person who has received letters to administer the estate of a decedent." N.Y. Estate Powers & Trusts L. § 1-2.13. A plaintiff does not have the legal capacity to bring a claim on behalf of an estate unless he or she has been issued letters of

administration.  See, e.g., Hartke v. Bonhams & Butterfields Auctioneers Corp., 2024 WL 246139, at *8 (S.D.N.Y. Jan. 23, 2024) ("[plaintiff] has not been appointed as personal representative of the Estate, and therefore she lacks standing to assert claims on behalf of the Estate.") (Gardephe, J.); Harrison v. Harlem Hosp., 2007 WL 2822231, at *2 (S.D.N.Y. Sept. 28, 2007) (plaintiff without letters of administration lacked the legal capacity to bring suit on estate's behalf) (Pauley, J.).

Plaintiffs urge that the Plan has not been prejudiced by the failure to amend the pleading to properly allege that Robert is the administrator of the Estate.  (Opp. Mem. at 10.) They state: "If in fact, the plaintiff has failed to formally file and [sic] amended complaint to add the Administrator of the Estate, the plaintiff respectfully seeks leave of the court to file such amended complaint, *nun* [sic] *pro tunc*."  (Id.)  Plaintiffs offer no explanation for the failure to file an amended complaint, as ordered by the Court.  They do not dispute that they were repeatedly given clear notice of the obligation to obtain letters of administration and amend the complaint.  This action was stayed for approximately 14 months so that plaintiff could obtain letters of administration.  (Minute Entry 1/10/22; ECF 27.)  In opposition to the summary judgment motion, plaintiffs have not submitted letters of administration or offered any other factual showing of Robert's status as Estate administrator.

Plaintiffs have not made any showing that Robert may properly act on behalf of the Estate as its Administrator and have offered no explanation for their failure to amend the Complaint as previously ordered.  Any request for leave to re-plead is denied.

The Estate's claim against the Plan and the claims brought by Robert on behalf of R.H. and Y.H. in his capacity as administrator will be dismissed.

III.    Plaintiffs Have Not Identified an Actionable Duty
        <u>Breached by the Plan.</u>

As an alternative basis to grant the Plan's motion, the Court concludes that plaintiffs have not identified an actionable duty breached by the Plan that supports a negligence claim. Plaintiffs' sole claim against the Plan asserts that the Plan negligently distributed the annuity account's proceeds to Emerecia. (Compl't ¶¶ 56-60.) Plaintiffs specifically assert that the Plan "had a duty to exercise 'due diligence' to ensure that the decedent's annuity account was properly distributed to the proper party." (Compl't ¶ 57.). They have asserted that the Plan "breach[ed] its duty to decedent and decedent's rightful beneficiaries, by failing to properly authenticate the fraudulent documents submitted by defendant, Quenia D. Emerica [sic]." (Compl't ¶ 59.)

ERISA expressly preempts any negligence claim asserted under New York law. The statute preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). "State laws, or actions pursuant to state law, that have been preempted include: common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program . . . ." <u>Aetna Life Ins. Co. v. Borges</u>, 869 F.2d 142, 146 (2d Cir. 1989). "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." <u>Id.</u> at 146-47.

Plaintiffs invoke New York law to assert that the Plan negligently distributed Decedent's annuity account funds to Emerecia instead of undertaking additional scrutiny to verify her spousal status. Because the claim is premised on a common-law duty that is not

required under ERISA or Plan documents, it is preempted by ERISA, and summary judgment will be granted to the Plan.

If the claim is generously construed to assert that the Plan breached a duty required of it under ERISA, summary judgment would still be granted to the Plan. Section 404 of ERISA provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ." 29 U.S.C. §§ 1104(a)(1)(A)(i), 1104(a)(1)(B). A plan fiduciary must also discharge duties "in accordance with the documents and instruments governing the plan," provided that the duties are consistent with ERISA. Id. § 1104(a)(1)(D).

"The prudence of a fiduciary is measured according to the objective prudent person standard developed in the common law of trusts." Sacerdote v. New York Univ., 9 F.4th 95, 107 (2d Cir. 2021) (quotation marks omitted). "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Hughes v. Northwestern Univ., 142 S. Ct. 737, 738 (2022) (quotation marks, internal citation and ellipsis omitted). "[T]he circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." Id. at 742.

For example, a fund does not breach its duty of prudence by failing to advise participants about the full array of options for submitting forms through an online portal instead of through the U.S. mail. Wong v. I.A.T.S.E., 2024 WL 898866, at *4 (S.D.N.Y. Mar. 1, 2024)

(Engelmayer, J.). Similarly, a "fund's failure to inform a participant of his failure to pay outstanding premiums [is] not misleading because ERISA does not create a duty to 'investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees.'" Id. (quoting Bernstein v. Metro. Life Ins. Co., 453 F. Supp. 2d 554, 559 (D. Conn. 2006)); see also id. ("'Absent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances.'") (quoting Barrs v. Lockheed Martin Corp., 287 F.3d 202, 207 (1st Cir. 2002)). "[U]nder ERISA the administrator is not a personal trustee but rather a fiduciary for the limited purpose of overseeing whatever plan it creates for what may be thousands of employees and other beneficiaries." Barrs, 287 F.3d at 207.

Plaintiffs argue that the Plan had a duty "to determine the rightful beneficiary" of Decedent's annuity account, independent of the duties imposed in the ERISA statute or in Plan documents. (Opp. Mem. at 12.) But no plaintiff was designated as a beneficiary of Decedent's annuity account, and the Plan acted consistent with Plan documents by distributing account proceeds to the individual identified as Decedent's spouse. Emerecia certified her spousal status in the "Statement of Annuity Beneficiary or Other Claimant" and separately completed a "Death Benefit Distribution Form." (Steinberg Dec. Ex. N.) Shortly after his death, Decedent's former employer faxed to the Plan the marriage certificate of Emerecia and Decedent. (Steinberg Dec. Ex. I.) Decedent identified Emerecia as his spouse in two beneficiary-designation forms submitted in 2009. (Steinberg Dec. Exs. Q, U.) There is no suggestion that the Plan had actual or constructive knowledge that Decedent and Emerecia had entered into a "Stipulation of Divorce" or that the Dominican Republic had issued the "Extracto De Acta De Divorcio."

Plaintiffs do not point to any language in ERISA or the Plan's governing documents that create a duty for the Plan to investigate anew the participant's marital status at the time of death.

Plaintiffs also argue that Decedent submitted "ambiguous and conflicting Plan documents," and point to the written comments of November 16, 2009 by Mary Hickey of the Plan, who noted that Decedent had not enrolled his children as beneficiaries. (Steinberg Dec. Ex. Q.) Again, however, plaintiffs point to no language in ERISA or in Plan documents that created a duty to affirmatively correct a participant's submissions. It also is not apparent that Decedent submitted conflicting documents, as opposed to intending to list his children as beneficiaries of his welfare death benefits but not beneficiaries of his annuity account. Plaintiffs also argue that the Plan had a duty to make additional inquiry due to Emerecia's assertion to the Plan that Decedent had been "murdered." (Opp. Mem. at 11.) But no language in ERISA or the Plan documents creates or implies such a duty.

Plaintiffs would require a resource-intensive duty to investigate a participant's marital status and to confirm or clarify a participant's choice of designated beneficiaries across different plan documents. Neither the text of ERISA nor the Plan's governing documents create such a duty.

Therefore, in addition to plaintiffs' lack of statutory standing and inability to proceed on behalf of the Estate, summary judgment is separately granted to the Plan because plaintiffs have not identified an actionable duty breached by the Plan.

CONCLUSION.

The Plan's motion for summary judgment is GRANTED. The Clerk is respectfully directed to terminate the motion. (ECF 37.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 21, 2024